IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TOBIE MANUEL TORRES, et al.,

    Plaintiffs,

vs.                                                                                                      Civ. No. 19-1010 JAP/JFR

MARK R. SHEA, Cabinet Secretary of
the New Mexico Department of Public
Safety (NMDPS), in his official
capacity, et al.

    Defendants.

## MEMORANDUM OPINION AND ORDER

On January 14, 2020, Plaintiffs filed a SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF PURSUANT TO 42 U.S.C. § 1983 ("Complaint") (Doc. No. 39), alleging that Defendants failed "to establish constitutionally adequate due process for individuals relocating to New Mexico before subjecting individuals to the substantial burdens and affirmative restrictions imposed for sex offender registration." *Id.* at ¶ 9. Plaintiffs alleged claims against state officials Mark Shea, Cabinet Secretary of the New Mexico Department of Public Safety ("NMDPS"), and Katherine Garcia, NMDPS Sex Offender Registration and Notification Act ("SORNA") Program Supervisor (collectively, "NMDPS Defendants"), in their official capacities. Plaintiffs also alleged claims against Bernalillo County Sheriff Manuel Gonzales, Lea County Sheriff Corey Helton, Doña Ana County Sheriff Kim Stewart, and Curry County Sheriff Wesley Waller (collectively, "County Defendants"), all in their official capacities. On January 28, 2020, County Defendants[1] filed DEFENDANTS GONZALES,

---

[1] County Defendants appear to be represented by different counsel. Sheriffs Gonzales, Stewart, and Waller have representation independent of Sheriff Helton. Sheriff Helton did not join the County Motion, and instead filed an answer to the Complaint. *See* ANSWER BY DEFENDANT COREY HELTON TO SECOND AMENDED

1

STEWART, AND WALLER'S MOTION TO DISMISS UNDER RULE 12(b)(6) ("County Motion") (Doc. No. 43). The same day, NMDPS Defendants filed NMDPS DEFENDANTS' FIRST MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF PURSUANT TO 42 U.S.C. § 1983 & MEMORANDUM IN SUPPORT THEREOF ("NMDPS Motion") (Doc. No. 44). County Defendants and NMDPS Defendants both argue that the statute of limitations has run on the claims of four of the five Plaintiffs, that Plaintiffs lack standing to raise these claims, and that Plaintiffs fail to state a claim for relief. County Defendants additionally argue that Plaintiffs cannot sue the sheriffs directly, but instead must sue the sheriffs' respective boards of county commissioners. The Court agrees that the claims against Bernalillo County, Doña Ana County, and Curry County are barred by the statute of limitations. The Court also believes that Plaintiff Rusnak's claims against Lea County Sheriff Corey Helton should be dismissed because Sheriff Helton is not the proper party. The Court, however, will allow Plaintiff Rusnak to substitute the Lea County Board of County Commissioners in place of Defendant Helton. The Court concludes Plaintiff Rusnak has sufficiently established standing to sue NMDPS Defendants and has stated a claim for relief against NMDPS. Accordingly, the Court will grant NMDPS Motion only as the to Plaintiffs other than Plaintiff Rusnak

**Factual Background**

Plaintiffs are a group of New Mexico residents who have previous, out-of-state sex offense convictions. Compl. at ¶¶ 44–49. Upon moving to New Mexico, Plaintiffs "were required to register with in New Mexico as sex offenders and comply with all of the burdens associated with registration . . . ." *Id*. at ¶ 44. Plaintiff Torres was convicted and sentenced in 2005, moved to

---

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF PURSUANT TO 42 U.S.C. § 1983 (Doc. No. 42).

Texico, New Mexico in 2011, and began registering as a sex offender in 2012. *Id*. at ¶ 45. Plaintiff Torres "reported to the Curry County Sheriff's department and was told he was to register every 90 days for life." *Id*. Plaintiff Rusnak was convicted of "sexual offenses that occurred when he was a juvenile." *Id*. at ¶ 46. Plaintiff Rusnak "was told that he had to register as a sexual offender when he came to New Mexico in April of 2019." *Id*. Plaintiff Bidwell was convicted in Idaho in 2003 and, "[u]pon relocating to New Mexico, Dona Ana County, in 2008 he was told by the sheriffs that based upon NMDPS policy he had to register for every 90 days for the remainder of his life." *Id*. at ¶ 47. Plaintiff Marquez was convicted and sentenced in 1996 and has been instructed to register in New Mexico since 2012.[2] *Id*. at ¶ 48. Plaintiff Smith was "convicted and sentenced in 2003 in a military court in Hessen, Germany . . . [and] [u]pon relocation to New Mexico, he was told by Dona Ana County to register every 90 days for life." *Id*. at 49. Allegedly "[t]his requirement . . . carried over when he moved to Bernalillo County" and Plaintiff Smith has been instructed to register since 2007. *Id*.

According to the Complaint, "Plaintiffs are required to register in New Mexico solely on the basis that their out-of-state conviction is 'equivalent' to a New Mexico offense requiring registration." *Id*. at ¶ 55. Plaintiffs allege they have not received any formal equivalency determination and that many "have languished [on the registry] as 'waiting on translation' for several years." *Id*. at ¶ 56. Furthermore, Plaintiffs contend that they had no notice before being required to register without a formal determination, and have had no opportunity or forum to contest their status. *Id*. at ¶¶ 57–58. Plaintiffs sued both their respective county sheriffs and the state administrators of the New Mexico SORNA program under 42 U.S.C. ¶ 1983 for denying

---

[2] Plaintiff Marquez appears to be a resident of Bernalillo County. PLAINTIFFS' RESPONSE TO DEFENDANTS' GONZALES, STEWART, AND WALLER'S MOTION TO DISMISS UNDER RULE 12(b)(6), OR ALTERNATIVELY FOR LEAVE OF COURT TO AMEND COMPLAINT ("Plaintiffs' Response"), Exh. D at 4 (Doc. 47-2).

3

Plaintiffs procedural due process in their equivalency determinations. *See* Compl. at 15. Plaintiffs seek: (1) "[a] declaratory judgment that Defendants, in their official capacities, have violated the Due Process rights of Plaintiffs[;]" (2) an order "directing Defendants, in their official capacities, to remove the name and other information of Plaintiffs from all publicly published sex offender registries until procedural due process is provided to each Plaintiff;" (3) an injunction "barring Defendants, in their official capacities, from enforcing any law pertaining to the registration of Plaintiffs unless and until procedural due process is provided to the individuals[;]" and (4) "[a]ttorney's fees and costs [under] 42 U.S.C. §1988 and any other applicable federal or state statute." *Id*. Both County Defendants and NMDPS Defendants moved to dismiss the Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim for relief.

## Motion to Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion "tests the sufficiency of the allegations within the four corners of the complaint[.]" *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). When considering a Rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *See Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009). The allegations must "state a claim to relief that is plausible on its face." *Id.* A plaintiff must present a complaint "with enough factual matter (taken as true) to suggest" that a court could grant the relief sought. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A plaintiff's obligation to provide the grounds for the plaintiff's entitlement to relief "requires more than labels and conclusions[.]" *Id*. at 555. A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. A court should dismiss when, from the face of the complaint, it "appears that the plaintiff can prove no set of facts in support of the claims that would entitle the

plaintiff to relief." *Soc'y of Separationists v. Pleasant Grove City*, 416 F.3d 1239, 1241 (10th Cir. 2005) (quotation marks omitted)

### 1. Statute of Limitations

County Defendants first argue that Plaintiffs' claims are time-barred by the statute of limitations for § 1983 claims. *See* County Motion at 5–7.[3] "Section 1983 provides a federal cause of action, but in several respects . . . [the] federal law looks to the law of the State in which the cause of action arose." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). This applies to the cause of action's statute of limitations—federal law borrows the statute of limitations provided by the relevant state statute of limitations for personal injury torts. *See id*. The applicable personal injury statute of limitations in New Mexico is three years. *See* NMSA 1978 § 37–1–8 ("Actions . . . for an injury to the person or reputation of any person [must be brought] within three years"); *accord Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212 (10th Cir. 2014). The parties do not disagree that the statute of limitations for a § 1983 cause of action is three years. Rather, the parties dispute whether the three-year limitations period has accrued for Plaintiffs.

"[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388 (emphasis in original). "Claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur." *Beck v. City of Muskogee Police Dep't,* 195 F.3d 553, 558 (10th Cir. 1999) (quoting *Johnson v. Johnson County Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991)). "[T]he standard rule" is that "[accrual occurs] when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (internal quotation marks and citations omitted). "In particular, a civil rights

---

[3] Because County Defendants and NMDPS Defendants raise nearly identical arguments with respect to statute of limitations, for the sake of clarity, the Court will only refer to the County Motion.

action accrues when facts that would support a cause of action are or should be apparent." *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004) (brackets and internal quotation marks omitted). "In this context, a plaintiff must use reasonable diligence in seeking to discover facts giving rise to a claim for relief." Id. at 1216. A plaintiff need not know the full extent of the harm in order for the statute of limitations to begin to run. *See Varnell*, 756 F.3d at 1216. "The cause of action accrues even though the full extent of the injury is not then known or predictable." *Id.* (quoting *Wallace*, 549 U.S. at 391) (brackets omitted). "Were it otherwise the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Wallace*, 549 U.S. at 391.

Plaintiffs assert that the statute of limitations has not run for any of their claims because they experience an "ongoing deprivation" for their continued need to register. Pls.' Resp. at 4–5. Plaintiffs liken their harm to false imprisonment "for which the limitations period begins to run when the deprivation of liberty ends." *Id*. at 5. (citing *Wallace*, 549 U.S. at 389). The ongoing deprivation doctrine "extends the statute of limitations where there is a continuous series of unlawful acts." *Parker v. Bourdon*, No. 19-4124, 2020 WL 489169, at *2 (10th Cir. Jan. 30, 2020) (unpublished). The statute of limitations "is triggered by continuing unlawful acts but not by continued damages from the initial violation." *Colby v. Herrick*, 849 F.3d 1273, 1280 (10th Cir. 2017). The Tenth Circuit "[has] not yet determined whether this doctrine applies to § 1983 claims" but has nonetheless disposed of some types of claims on the assumption the doctrine applies. *Bourdon*, 2020 WL 489169, at *2; *see also Vasquez v. Davis*, 882 F.3d 1270, 1277 (10th Cir. 2018) (noting that "even if we were to apply that [ongoing deprivation] doctrine, it would not save Vasquez's [§ 1983] claims.").

6

One closely analogous category of claims the Tenth Circuit has disposed in this way is deprivation of due process for sex-offender registry disputes. *See Bourdon*, 2020 WL 489169, at *2.[4] In *Bourdon*, the plaintiff pleaded guilty in 2004 to misdemeanor sexual abuse of a minor. *Id.* at *1. In 2007, while the plaintiff "was serving part of his prison sentence following a parole revocation, he was required to register with the state sex-offender registry." *Id.* According to the plaintiff, "his plea agreement did not include any registration requirement; nor did the sentencing court instruct him to register [with the state sex-offender registry]." *Id.* The plaintiff sued the state of Utah and various officials in charge of the sex-offender registry in 2018 for unfairly compelling him to register for fourteen years. *Id.* The defendants moved to dismiss the claims as untimely, and the plaintiff argued that having to re-register periodically constituted a continuous harm. *Id.* The district court "rejected [the plaintiff's] continuing-violation argument, concluding that [the plaintiff's] claims 'arise from the discrete act of being required to register,' which 'occurred no later than March 2007.'" *Id.*

On appeal, the Tenth Circuit agreed with the district court that the claims should be dismissed. *See id.* at *2. The *Bourdon* Court concluded that the "consequences of being required to register as a sex offender do not transform [the plaintiff's] 2007 registration requirement into a continuous violation of his rights." *Id.*; *see also Meggison v. Bailey*, 575 F. App'x 865, 867 (11th Cir. 2014) (per curiam) ("This [sex-offender] classification will continue to have effects on [appellant] into the future, but a new act has not occurred every time [appellant] feels one of those continuing effects.")); *Delaney v. Thompson*, No. 18-3037-SAC, 2020 WL 42270, at *1 (D. Kan.) (rejecting argument that requirement to register as sex offender is continuing violation), *appeal docketed*, No. 20-3001 (10th Cir. Jan. 8, 2020). The Tenth Circuit continued that the plaintiff's

---

[4] The Court recognizes that the Tenth Circuit's *Bourdon* decision is unpublished, and therefore, not precedential. *See* 10th Cir. R. 32.1(A). The Court nonetheless believes *Bourdon* is persuasive for the Court's analysis here.

7

"allegations of continued *harm* stemming from his registration requirement fail to establish continued wrongful conduct on the part of the defendants." *Bourdon*, 2020 WL 489169, at *3 (emphasis in original); *see also Bergman v. United States*, 751 F.2d 314, 317 (10th Cir. 1984) (noting that continuous-violation doctrine is triggered "by continual unlawful acts, not by continual ill effects from the original violation").

Plaintiffs arguments, which are nearly identical to those raised in *Bourdon*, should similarly fail here. Plaintiffs allege that "Defendants' actions affect a significant liberty interest or property interest of Plaintiffs. Plaintiff's [sic] endure significant burdens on their liberty that are not placed on non-registered residents of New Mexico." Compl. at ¶ 52. Regardless, the harms here stem from the Plaintiffs' alleged initial registration without sufficient process. Assuming the allegations as true, Plaintiffs have experienced continued *harm* since the initial act of registration, but under the Tenth Circuit's guidance, this does not equate to a continued series of harmful acts. *See Bourdon*, 2020 WL 489169, at *2–3. The Court therefore must dismiss all claims that arose outside the three years before the filing of the Complaint. Accordingly, only Plaintiff Rusnak's claims fall within the statute of limitations on account of his 2019 registration. *See* Compl. at ¶ 46. All other plaintiffs registered before 2016, the earliest reach of the statute of limitations, and their claims will be dismissed.

### 2. New Mexico Naming Statute

County Defendants argue that Plaintiffs improperly named them, as opposed to the respective boards of county commissioners, in violation of New Mexico law. *See* Cty. Mot. at 8–9. Under Federal Rule of Civil Procedure 17, for non-individual or corporate entities: "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." The New Mexico Tort Claims Act requires that, "[i]n all suits or proceedings by or against a county, the

name in which the county shall sue or be sued shall be the board of county commissioners of the county of [county name] . . . ." NMSA 1978 § 4-46-1. County Defendants argue that the naming statute bars official-capacity suits against individually named county officials. Cty. Mot. at 9. Though the Tenth Circuit law on this issue is not as clear, so far, courts in the District of New Mexico have consistently concluded that the naming statute precludes claims against individual county officials. *See Mayer v. Bernalillo Cty.*, No. CV 18-0666 JB\SCY, 2018 WL 6594231, at *30 (D.N.M. Dec. 13, 2018); *Lamendola v. Taos Cty. Sheriff's Office*, 338 F. Supp. 3d 1244, 1251 (D.N.M. 2018). The Tenth Circuit has noted that:

> an official capacity suit is only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity, and not as a suit against the official personally, for the real party in interest is the entity.

*Johnson v. Bd. of Cty. Comm'rs for Cty. of Fremont*, 85 F.3d 489, 493 (10th Cir. 1996) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (internal quotation marks omitted). The Court will thus construe the Complaint against the County Defendants in their official capacities as one against their respective counties. Accordingly, the Court agrees with the reasoning in *Lamendola* and *Mayer* that official-capacity suits against county sheriffs must be directed to their respective board of county commissioners. The Court will dismiss Plaintiff Rusnak's claims against remaining County Defendant Corey Helton, but will allow Plaintiff Rusnak leave to amend the complaint to name the Lea County Board of County Commissioners as a proper defendant.

### 3. Standing

NMDPS argues that none of the Plaintiffs, including Rusnak, have standing to bring their claims. NMDPS Mot. at 7. NMDPS assert that "Plaintiffs have not alleged any specific action by

Cabinet Secretary Shea or Special Programs Supervisor Garcia. As such, they have not established standing to proceed against these Defendants." *Id*. The Court disagrees.

To establish standing in a federal court, a plaintiff must "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo*, 136 S. Ct. at 1547. Where a case is at the pleading stage, "the plaintiff must clearly . . . allege facts demonstrating each element." *Id*. (internal quotation marks omitted).

First, "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' *Id*. at 1548 (quoting *Lujan*, 504 U.S. at 560). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly trace[able] to the challenged action of the defendant, and not . . .th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)) (brackets in original). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 38).

The Tenth Circuit has recognized that sex-offender registration "suffice[s] to damage [a registrant's] reputation." *Brown v. Montoya*, 662 F.3d 1152, 1169 (10th Cir. 2011). Furthermore, sex-offender registration imposes burdens on a registrant that "significantly alter his status as a matter of state law." *Id*. (citing *Gwinn v. Awmiller*, 354 F.3d 1211, 1224 (10th Cir. 2004)). As the Tenth Circuit observed:

> [f]irst, sex offender registration carries steep penalties. The Registry Statute states that "[a] sex offender who willfully or knowingly fails to comply with the registration requirements set forth in this section is guilty of a fourth degree felony." [NMSA § 29–11A–4(C)]. In *Gwinn*, we said that, because sex offender registration imposes "on a person . . . a new set of legal duties that, if disregarded, subject him or her to felony prosecution, [it] constitutes a change of that person's status under state law." 354 F.3d at 1223 n. 4 (quoting *Doe v. Dept. of Pub. Safety*, 271 F.3d 38, 57 (2d Cir. 2001), *reversed on other grounds by Doe*, 538 U.S. 1, 123 S.Ct. 1160).
>
> Second, placing [the registrant] in the sex offender probation unit altered his legal status because [state corrections policy] states that sex offenders' "travel, employment and residency are subject to restrictions that may be more stringent than those normally imposed on other types of offenders." Policy at 4.

*Montoya*, 662 F.3d at 1169.

Plaintiff Rusnak alleges that he was "convicted of sexual offenses that occurred when he was a juvenile." Compl. at ¶ 46. "Despite being a juvenile when he committed these acts, he was told that he had to register as a sexual offender when he came to New Mexico in April of 2019." *Id*.[6] Plaintiff Rusnak "was told he had to register every 90 days for lifetime and submit documents to his employers outlining his convictions and status as a sex offender." *Id*. Plaintiff Rusnak allegedly "requested documents and information showing that he had to register every 90 days and

---

[6] Plaintiff Rusnak claims that "New Mexico law does not require sex offender registration for offenses committed by juveniles." Compl. at ¶ 46. Though the Court, for the purposes of a motion to dismiss, must take all the factual allegations in the complaint as true, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The circumstances under which juveniles in New Mexico must register for SORNA are unclear, and the Court cannot conclude that juvenile convictions categorically do not result in registration. According to the Institute of Public Law at the University of New Mexico School of Law:

> When the Legislature amended SORNA in 2008, it deleted from the definition of sex offender the requirement that a sex offender be a person 18 years of age or older. *Compare* [NMSA 1978] § 29-11A-3 (2003) *with* § 29-11A-3 (2007). However, the Act does not expressly state the circumstances under which juveniles may be subject to its requirements. Reading SORNA and related New Mexico laws together supports the conclusion that a child meets SORNA's definition of "sex offender" and is subject to SORNA's requirements only if he is a youthful offender who has been given an adult sentence for a sex offense in accordance with the Children's Code.

Institute of Public Law, University of New Mexico School of Law, NEW MEXICO JUVENILE JUSTICE HANDBOOK, p. 31-1 (2011). Whether Plaintiff was or was not properly required to register is not relevant here though, because the "injury that satisfies the first standing prong is not [an erroneous registration] but the ongoing unpredictability of plaintiff's legal circumstances." *Meredith v. Stein*, 355 F. Supp. 3d 355, 361 (E.D.N.C. 2018).

11

that he was required to register if his acts were committed as a juvenile . . . [and] [d]espite repeated requests, he has not been provided with any documentation by NMDPS." *Id*. Additionally, Plaintiff Rusnak was "given no notice nor opportunity to be heard prior to or after the 'equivalent offense determination was made . . . [and has had] no opportunity to contest this determination in any trial, hearing, or other appeal forum." *Id*. at ¶¶ 57–58. Taking the allegations in the Complaint as true, as the Court must, Plaintiff Rusnak "endure[s] significant burdens on [his] liberty that are not placed on non-registered residents of New Mexico." *Id*. at 52. His placement on the registry "causes [him] reputational harm . . . [and] significantly alters [his] legal status and rights . . . ." *Id*. at 53–54. That Plaintiff Rusnak suffers a concrete and particularized injury by being placed on the registry with no notice or recourse is clear.

NMDPS Defendants primarily attack the second standing prong—traceability. *See* NMDPS Mot. at 7. NMDPS Defendants argue that "Plaintiffs have not alleged any specific action by Cabinet Secretary Shea or Special Programs Supervisor Garcia." *Id*. NMDPS Defendants fail to acknowledge that this is an official capacity suit, that is, the suit is against the office and state rather than Cabinet Secretary Shea or Special Programs Supervisor Garcia individually. NMDPS, in conjunction with county sheriff's offices, oversees and administers the sex offender registry. *See* NMSA 1978 § 29-11A-5 (requiring NMDPS to "maintain a central registry of sex offenders required to register pursuant to the provisions of the Sex Offender Registration and Notification Act."). The Court is also required here to accept as true that: (1) "Defendant Shea is responsible for maintaining New Mexico's statewide sex offender registry and overseeing the determination of whether or not an individual is required to register as a sex offender in New Mexico[;]" and (2) "[i]n her official capacity, [Defendant] Garcia is charged with overseeing the determination of whether or not an individual relocating to New Mexico is required to register as a sex offender."

12

Compl. at ¶¶ 17–18. Thus, an alleged failure to provide due process in the sex offender registry system is directly traceable to the entity that administers it, NMDPS. Plaintiff Rusnak has satisfied the second standing prong.

With respect to redressability, a favorable decision would likely redress the injury because Plaintiff seeks to enjoin his registration until he is given adequate process. Granting an injunction on the state's enforcement of his registration would end the restrictions on his liberty described above and give Plaintiff Rusnak a chance to have a proper equivalency determination. Because Plaintiff Rusnak has sufficiently established an injury in fact, traceable to NMDPS Defendants and that can be likely redressed by this Court, he has standing to bring his claims.

### 4. Failure to State a Claim

NMDPS Defendants finally argue that Plaintiff Rusnak fails to state a claim for relief because the "Complaint makes many allegations not specifically tied to any particular plaintiff, any particular Defendant, or any particular harm." NMDPS Mot. at 7. NMDPS Defendants believe the "Complaint fails to illustrate the simplest version of who did what to whom[,]" specifically that the Complaint lacks "allegations regarding specific conduct by Secretary Shea and Supervisor Garcia . . . ." *Id*. at 8. NMDPS Defendants cite to Tenth Circuit caselaw that requires a complaint to specifically allege what individual defendants have done wrong in order to properly state a claim. *See id*. at 7 (citing *Montoya*, 662 F.3d at 1165).

NMDPS Defendants' argument fails because the specificity requirements apply when defendants are sued in an individual capacity. The Tenth Circuit in *Montoya* said that:

> As we recently reiterated, "it is particularly important" in a § 1983 case brought against "a number of government actors sued in their individual capacity . . . that the complaint make clear exactly who is alleged to have done what to whom . . . as distinguished from collective allegations." *See* [*Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)] (quoting [*Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008)]. Because the defendants here are "mistakenly

13

grouped in a single allegation," the Complaint "fails to isolate the allegedly unconstitutional acts of" Secretary Williams. See *id*. at 1250.

*Montoya*, 662 F.3d at 1165. A plaintiff needs to identify specific actions for specific individuals so that they "provide adequate notice as to the nature of the claims against" each defendant. *Robbins*, 519 F.3d at 1250. Plaintiff Rusnak alleges that NMDPS administers a registry that is procedurally flawed for incoming residents, which causes him harm. Because this is not an individual-capacity suit, Plaintiff Rusnak must only identify what NMDPS and the State of New Mexico have done to harm him. The Complaint provides NMDPS notice of what it, as a governmental entity, is alleged to have done.

Furthermore, Plaintiff Rusnak has stated a claim upon which relief may be granted. The Tenth Circuit has held that, "[t]o assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Montoya*, 662 F.3d at 1167 (quoting *Merrifield v. Bd. of Cnty. Comm'rs*, 654 F.3d 1073, 1078 (10th Cir. 2011)). "[R]equiring a person to register as a sex offender triggers the protections of procedural due process" because, as discussed above, it attaches a stigma and alters a registrant's legal status. *Montoya*, 662 F.3d at 1168. Thus, procedural due process guarantees apply to Plaintiff Rusnak's initial registration.

Assuming that the county sheriffs directed him to register and NMDPS placed him on the registry with *no* process, as alleged, NMDPS Defendant denied Plaintiff Rusnak due process. The procedural protections due to an alleged sex offender registrant include "notice of the charges, an opportunity to present witnesses and evidence in defense of those charges, and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action before being classified as a sex offender[.]" *Montoya*, 662 F.3d at 1169–70 (citing *Gwinn*, 354 F.3d at 1219).

14

In *Montoya*, the plaintiff's probation officer erroneously required the plaintiff to register as a sex offender. *Montoya*, 662 F.3d at 1159. The plaintiff sued under 42 U.S.C. § 1983, "alleg[ing] that the defendants, acting under color of law, violated his constitutional rights by wrongly directing him to register as a sex offender and placing him in the sex offender probation unit." *Id*. at 1160. "According to the Complaint, Officer Montoya gave Mr. Brown no process before placing him in the sex offender probation unit and directing him to register as a sex offender." *Id*. at 1169. As a result, "Mr. Brown did not even receive the procedural protections that would have been due before a prison inmate could be classified as a sex offender. He therefore sufficiently alleged that he did not receive constitutionally adequate process." *Id*. at 1170.

The Complaint here alleges that Plaintiff Rusnak received no process before his equivalency determination was made and he was required to register. "Where there is no process, there can be no due process." *Stein*, 355 F. Supp. 3d at 365. Like the plaintiff in *Montoya*, Plaintiff Rusnak has allegedly not received the protections due before registration. Accordingly, he has sufficiently alleged a deprivation of constitutionally adequate procedural due process, and the Court will not dismiss his claims against NMDPS Defendants.

**Conclusion**

The Court will dismiss all claims by Plaintiffs Torres, Bidwell, Marquez, and Smith against County Defendants with prejudice based on untimeliness and failure to name the proper party. The Court will dismiss Plaintiff's Rusnak's claims against Defendant Lea County Sheriff Corey Helton, but will allow him to substitute the Lea County Board of County Commissioners, if he so chooses. The Court will also dismiss the claims by Plaintiffs Torres, Bidwell, Marquez, and Smith against NMDPS Defendants with prejudice for untimeliness. The Court will deny the NMDPS

15

Motion with respect to Plaintiff Rusnak's claims and will allow his claims for injunctive and declaratory relief to proceed against NMDPS.

IT IS THEREFORE ORDERED that:

(1) DEFENDANTS GONZALES, STEWART, AND WALLER'S MOTION TO DISMISS UNDER RULE 12(b)(6) (Doc. No. 43) is GRANTED with respect to Plaintiffs Torres, Bidwell, Marquez, and Smith;

(2) DEFENDANTS GONZALES, STEWART, AND WALLER'S MOTION TO DISMISS UNDER RULE 12(b)(6) (Doc. No. 43) is GRANTED with respect to Plaintiff Rusnak's claims against Lea County Sheriff Corey Helton, but Plaintiff Rusnak may, if he chooses, file a third amended complaint naming the Lea County Board of County Commissioners;

(3) NMDPS DEFENDANTS' FIRST MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF PURSUANT TO 42 U.S.C. § 1983 & MEMORANDUM IN SUPPORT THEREOF (Doc. No. 44) is GRANTED with respect to Plaintiffs Torres, Bidwell, Marquez, and Smith, but DENIED with respect to Plaintiff Rusnak; and

(4) Plaintiff Rusnak must file his amended complaint by April 27, 2020.

_____
SENIOR UNITED STATES DISTRICT JUDGE